## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

SAM CARLISLE,

      Plaintiff,

v.

DAWSON GEOPHYSICAL COMPANY,
STEPHEN C. JUMPER,
MARK A. VANDER PLOEG,
CRAIG W. COOPER,
MICHAEL L. KLOFAS, and
TED R. NORTH,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

Plaintiff Sam Carlisle ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE THE ACTION

1.      Plaintiff brings this action against Dawson Geophysical Company ("Dawson" or the "Company") and its corporate directors for violating Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"). By the action, Plaintiff seeks to enjoin the consummation of a tender offer (the

"Tender Offer") underlying the proposed acquisition of the Company by Wilks Brothers, LLC "(Wilks") through its subsidiary WB Acquisitions Inc. ("Offeror") (the "Proposed Transaction").[1]

2.      On October 25, 2021, Dawson and Wilks jointly announced their entry into an Agreement and Plan of Merger (the "Merger Agreement") dated the same day.  The Merger Agreement provides that, for each share they own, Company stockholders will receive $2.34 in cash (the "Offer Price").  Purchaser commenced the Tender Offer on November 1, 2021, which is scheduled to expire at 12:00 midnight, New York Time, on November 24, 2021 (one minute following 11:59 p.m., New York Time, on November 30, 2021).

3.      On November, 2021, Dawson filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC.  The Recommendation Statement, which recommends that Dawson stockholders tender their stock into the Tender Offer, omits or misrepresents material information necessary and essential to that decision.  The failure to adequately disclose such material information violates the Exchange Act as Dawson stockholders need such information to make a fully informed decision whether to do so

4.      It is imperative that the material information omitted from the Recommendation Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their rights with respect to the Tender Offer and or any decision to seek appraisal for their shares.

5.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Tender Offer or Proposed Transaction unless

---

[1] Non-party Wilks is a Texas limited liability company and a multi-billion dollar asset management firm based in Cisco, Texas.  It owns a diverse group of companies involved in the energy, real estate, finance, industrial, ranching, forest and technology sectors.  Non-party Offeror is a Delaware corporation and a subsidiary of Wilks.

and until the material information discussed below is disclosed to the Company's stockholders.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Dawson maintains a facility in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## THE PARTIES

9.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Dawson.

10.      Defendant Dawson is a Delaware corporation with its principal executive offices located at 508 West Wall, Suite 800, Midland, Texas 79701.  Dawson is a leading provider of North American onshore seismic data acquisition services.  Dawson's common stock is traded on the Nasdaq Global Select Market under the ticker symbol "DWSN."

11.      Defendant Stephen C. Jumper ("Jumper") has been Chairman of the Board, President, Chief Executive Officer ("CEO"), and a director of the Company since February 2015.

12.     Defendant Mark A. Vander Ploeg ("Vander Ploeg") is Lead Director and is and has been a director of the Company since February 2015.

13.     Defendant Craig W. Cooper ("Cooper") is and has been a director of the Company since February 2015.

14.     Defendant Michael L. Klofas ("Klofas") is and has been a director of the Company since May 2018.

15.     Defendant Ted R. North ("North") is and has been a director of the Company since February 2015.

16.     Defendants identified in paragraphs 11-15 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### The Proposed Transaction

17.     On October 25, 2021, Dawson and Wilks jointly announced in relevant part:

MIDLAND, Texas, Oct. 25, 2021 -- Dawson Geophysical Company (NASDAQ: DWSN) ("Dawson" or the "Company") and Wilks Brothers, LLC ("Wilks") today announced that they have entered into a definitive merger agreement (the "Merger Agreement") pursuant to which a subsidiary of Wilks will commence on or before November 1, 2021 a tender offer to acquire all of the Company's outstanding common shares for $2.34 per share in cash (the "Offer"). Subject to the closing of the Offer, the merger agreement also contemplates that Wilks will acquire any Dawson shares that are not tendered into the Offer at the same price per share through a second-step merger, which will be completed as soon as practicable following the closing of the Offer, subject to the approval of at least 80% of the outstanding Dawson shares.

**Dawson Board of Directors Recommendation**

The Board of Directors of the Company is recommending that the Company's shareholders tender their shares in the Offer.

The Company's Board of Directors, with the assistance of the Company's financial advisor, Moelis & Company LLC, commenced an on-going review and analysis of the Company's potential strategic alternatives in mid-2019. During this same period, Company management commenced efforts to scale the Company to match the declining demand for its seismic services. In reaching its decision to enter into

4

the transaction with Wilks, the board has thoroughly considered the potential strategic options available to Dawson, the current and long term prospects for the Company and the sector in which it operates, including the lack of meaningful and sustainable demand for seismic services, as well as an ongoing skilled labor shortage required to meet any potential increase in demand. Management believes that the Company's cash and other current assets will continue to decline even if the Company undertakes further right-sizing efforts relative to demand for the Company's services. The board believes that this transaction presents all Dawson shareholders with an opportunity to achieve liquidity for their shares at the Offer price, is the most optimal path forward and is in the best interest of the shareholders.

The Company's President and Chief Executive Officer, Stephen C. Jumper, said, "Given the limited trading liquidity in our stock, this transaction offers our shareholders compelling value for their shares and the ability to most efficiently realize that value. It also provides Dawson with financial flexibility otherwise not available in the challenging environment in which the Company is currently operating. Our ability to withstand the continued volatile markets is enhanced with this partnership. The Wilks' entities have demonstrated a highly successful track-record and we believe they will be a strong, long-term partner for our employees and customers."

Additional information concerning the foregoing matters will be set forth in the Company's Solicitation/Recommendation Statement on Schedule 14D-9 to be filed with the Securities and Exchange Commission following the commencement of the Offer by Wilks.

**Tender Offer and Merger**

The transaction is not subject to a financing condition. The tender offer will be subject to customary conditions, including the tender of at least 80% of the outstanding shares of the Company pursuant to the Offer, which will be open for at least 20 business days following commencement (subject to mandatory extensions in certain circumstances). The Company and Wilks may mutually agree to permit closing of the Offer if less than 80% of the outstanding shares of the Company are tendered. Subject to the closing of the Offer, the Merger Agreement also contemplates that Wilks will acquire any shares of Dawson that are not tendered into the Offer through a second-step merger, which will be completed as soon as practicable following the closing of the Offer and will require approval of at least 80% of the outstanding shares of the Company. Subject to the closing of the Offer, the parties expect to complete the merger in the fourth quarter of 2021.

Moelis & Company LLC is serving as financial advisor to the Company and Baker Botts L.L.P. is serving as the Company's legal advisor.

**Preliminary Guidance on Third Quarter 2021 Results**

In conjunction with the transaction announcement today, the Company is providing estimated guidance related to certain of its preliminary and unaudited financial

results for its third quarter ended September 30, 2021. Dawson expects to issue its actual unaudited third quarter financial results on or about November 4, 2021.

For the quarter ended September 30, 2021, the Company estimates that it will report unaudited revenues of approximately $1.9 million and negative EBITDA in the range of approximately $4.4 million to $4.8 million, as compared to actually reported unaudited revenues of $193,000 and negative EBITDA of $5,667,000 for the quarter ended June 30, 2021. As of September 30, 2021, the Company estimates that it will report unaudited cash and cash equivalents, plus restricted cash and short term investments, of approximately $41.6 million, as compared to $45,917,000 of unaudited cash equivalents, restricted cash and short term investments actually reported as of June 30, 2021. For the nine months ended September 30, 2021, the Company estimates that it will report unaudited revenues of approximately $13.8 million and negative EBITDA in the range of approximately $12.0 million to $12.5 million as compared to actually reported unaudited revenues of $77,216,000 and EBITDA of $7,834,000 for the nine month period ended September 30, 2020.

Jumper continued, "Activity levels during the third quarter of 2021 remained depressed, as the Company had one seismic data acquisition crew operating in the lower 48 with extended periods of low utilization. The Company's one active crew was idle from early September to mid-October. The near-term outlook for seismic data acquisition activity in the U.S. remains challenged notwithstanding the currently elevated prices for oil and natural gas. Based on currently available information, the Company's one active lower 48 crew resumed operation in mid-October on a small, few thousand channel count project with a duration of approximately seven days and is further scheduled through early February of 2022 with current projects of various sizes and channel count requirements, the largest of which is 65,000 channels with a duration of approximately 45 days. The Canadian season should begin earlier than in recent years. The Company expects to operate two crews in Canada in the back half of the fourth quarter of 2021 through the end of the winter season which concludes at the end of the first quarter of 2022. The Company has or anticipates to be awarded several additional mid-sized projects in the lower 48, each of which will be pushed into late 2022 primarily due to land access issues. Bid activity remains at historically low levels and visibility into 2022 is limited in the lower 48. Due to a lack of demand for seismic data acquisition projects in both Canada and the lower 48, prices for our services softened in the last quarter."

**The Recommendation Statement Contains Material Misstatements and Omissions**

21.     The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Dawson's stockholders. The Recommendation Statement misrepresents or omits material information necessary for the Company's stockholders to make an informed decision whether to tender their shares in the Proposed Transaction or

otherwise act.

22.     The Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (a) the Company's financial projections; (b) the valuation analyses underlying the fairness opinions provided by the Company's financial advisor, Moelis & Company LLC ("Moelis"); (c) potential conflicts of interest affecting Moelis and Company insiders; and (d) the background of the Proposed Transaction.

23.     Dawson management's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Moelis & Company LLC ("Moelis"); (b) the background of the Proposed Transaction; and (c) the potential conflicts of interest faced by Moelis and Company insiders.

***Material Omissions Concerning Company Management's Financial Forecasts***

28.     The Recommendation Statement fails to disclose material information concerning the Company's financial forecasts, including the line items underlying the Company's projections for both adjusted EBITDA and unlevered free cash flow.

29.     The Proxy further fails to disclose the value of "Company NOL Utilization Estimates" upon which Moelis relied in providing its fairness opinion.  *See* Recommendation Statement at 28.

30.     The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information: section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Moelis's Financial Analyses***

21.     The Recommendation Statement omits material information regarding the data and inputs underlying the valuation analyses performed by Moelis

22.     The Proxy Statement describes Moelis's fairness opinions and the various underlying valuation analyses.  That description, however, omits key inputs and assumptions forming the bases of these analyses.  The absence of this material information precludes the Company's public stockholders from fully understanding Moelis's work.  As a result, Company stockholders cannot assess what significance to place on Moelis's fairness opinion in determining whether to participate in the Tender Offer or otherwise act.

23.     With respect to Moelis's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (a) the Company's anticipated utilization of its net operating losses utilized in the analysis, including the separate values of the U.S. and Canada net operating losses; (b) the Company's estimated terminal year Adjusted EBITDA used to derive the terminal value for Dawson; (c) the terminal value for the Company; and (d) the inputs and assumptions underlying the range of discount rates utilized by Moelis in connection with the analysis.

24.     With respect to Moelis's analysis of premiums paid in recent transactions, the Recommendation Statement fails to disclose: (a) the transactions observed; and (b) the individual premiums observed in each of the transactions.

25.     The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information" and "Financial Analyses and Moelis' Opinion" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.   When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must be fairly disclosed.

***Material Omissions Concerning Potential Conflicts of Interest Affecting Company Insiders***

26.     The Recommendation Statement fails to disclose material information concerning Moelis's potential conflicts of interest, including : (a) the monthly fees Moelis received from

Dawson in connection with its engagement; and (b) whether Moelis has provided any services to Wilks or its affiliates in the previous two years and, if so, the amount of fees Moelis has received for such services.

27.     The Recommendation Statement fails to disclose material information concerning Company insiders' potential conflicts of interest, including the specific details of all employment and retention-related discussions and negotiations that occurred between Wilks and Dawson' executive officers, including who participated in all such communications, when they occurred and their content.  The Recommendation Statement further fails to disclose whether any of Wilks's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

28.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

29.     The omission of this information renders the statements in the "Financial Analyses and Moelis' Opinion," "Background of the Offer and the Merger" and "Potential for Future Arrangements" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

30.     The Recommendation Statement fails to disclose material information concerning the background of the Proposed Transaction, including whether the Company entered into any confidentiality agreements with interested bidders during the sale process and, if so, whether any

confidentiality agreements include "don't-ask, don't-waive" ("DADW") standstill provisions that are presently precluding any of these potential counterparties from submitting a topping bid for the Company.

31.    Any reasonable Dawson stockholder would deem the fact that the most likely topping bidders for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

32.    The omission of this information renders the statements in the "Background of Offer and Merger" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

33.    The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement.   Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other Dawson stockholders will be unable to make an informed decision whether to tender their shares in the Tender Offer or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

### CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations
of Section 14(d) of the Exchange Act and SEC Rule 14d-9**

34.    Plaintiff repeats all previous allegations as if set forth in full.

35.    Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Dawson stockholders to tender their shares in the Tender Offer.

36.    Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

37.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

38.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

39.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the other stockholders of Dawson, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

40.     Plaintiff repeats all previous allegations as if set forth in full.

41.     Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary to make the statements made, in light of the circumstances under

which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer.

42.     Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer or seek appraisal.

43.     As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender her shares or seek appraisal.

## COUNT III

### Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

44.     Plaintiff repeats all previous allegations as if set forth in full.

45.     The Individual Defendants acted as controlling persons of Dawson within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Dawson and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

46.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47.     In particular, each of the Individual Defendants had direct and supervisory

12

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

48.     In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

49.     By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

50.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Dawson, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 9, 2021

Respectfully submitted,

/s/ Richard A. Acocelli

OF COUNSEL:

**LONG LAW, LLC**
Brian D. Long
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

Richard A. Acocelli
**WEISSLAW LLP**
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*